IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| THOMAS REEDY, | § | |
|    Petitioner - Appellant | § | |
| | § | |
| v. | § | Case No. 13-10370 |
| | § | |
| THE UNITED STATES OF AMERICA, | § | |
|    Respondent - Appellee | § | |

_____

Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
No. 4:12-CV-271

_____

**APPELLANT'S BRIEF IN SUPPORT OF MOTION
TO ISSUE CERTIFICATE OF APPEALABILITY**
_____


Terrence W. Kirk
State Bar No. 11513500
502 West 13th Street
Austin, Texas 78701
(512) 236-8511
(512) 476-5346 (Fax)
ATTORNEY FOR APPELLANT

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

(1) Thomas Reedy, Petitioner – Appellant;

(2) Wes Ball, Petitioner's trial counsel;

(3) Terri M. Moore, Assistant United States Attorney, counsel for the Government at trial;

(4) Frank Lawrence Gatto, Assistant United States Attorney, counsel for the Government on this appeal; and

(5) Terrence W. Kirk, counsel for Petitioner – Appellant.

<u>/s/ Terrrence W. Kirk</u>
Terrence W. Kirk

i

## STATEMENT REGARDING ORAL ARGUMENT

The issue in this case is straightforward, making oral argument unnecessary.

# TABLE OF AUTHORITIES

Page

**CASES**

*House v. Bell*, 547 U.S. 518 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 8

*Reyes-Requena*, 243 F.3d 893
(5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

**STATUTES**

18 U.S.C. § 2252. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2252A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2255(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 2255(h)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 8

## TABLE OF CONTENTS

    Page

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . .   i

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . .   ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF THE ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    A.    Course of Prior Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    B.    Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

POINT OF ERROR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

    THE DISTRICT COURT ERRED IN USING THE WRONG LEGAL
    STANDARD TO DENY APPELLANT RELIEF.

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

## STATEMENT OF JURISDICTION

Appellant seeks a certificate of appealability after the denial of habeas corpus relief. The District Court had jurisdiction under 28 U.S.C. §2255. This Court has jurisdiction to issue a COA pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUE

WHETHER THE DISTRICT COURT ERRED IN USING THE WRONG LEGAL STANDARD TO DENY APPELLANT RELIEF.

## STATEMENT OF THE CASE

**A.     Course of Prior Proceedings**

Thomas Reedy and his wife Janice were indicted for numerous violations of 18 U.S.C. § 2252 and 18 U.S.C. § 2252A. *United States v. Reedy*, 304 F.3d 358, 361 (5th Cir. 2001). "The jury found Thomas Reedy guilty on counts 1 through 89 and Janice Reedy guilty on counts 1 through 87. The court sentenced Thomas Reedy to 180 months' consecutive imprisonment on each count, plus three years' supervised release on each count, to run concurrently, and a special assessment of $8,900. His prison term would have equaled 1,335 years, so the court ordered that he serve a life sentence." *Id.* at 304 F.3d 363.

On appeal, however, this Court ordered a new sentencing hearing, *id.* at 304 F.3d 364-368, and Reedy was re-sentenced. Subsequently, he filed a motion attacking

his conviction pursuant to 28 U.S.C. § 2255, but this Court denied relief. *United States v. Reedy*, 2010 WL 3447822 (5th Cir. 2010) (Unpublished). In this successive 2255 motion, the Court granted Reedy a COA, and remanded the case to the district court. *Reedy v. United States*, 2013 WL 705155 (N.D. Tex 2013). He now seeks a COA to challenge the district court's order denying him relief.

**B.** **Statement of Facts**

This Court set out the Government's version of the facts in its previous opinion:

> In April 1999, Unites States Postal Inspector R. C. Adams contacted Detective Steve Nelson of the FBI's Crimes Against Children Task Force assigned to the Dallas Police Department's Child Exploitation Unit. Adams requested Nelson's aid in investigating an Internet website named "kintamani.com," which linked to another website named "Lolita World." Nelson agreed to access the website as part of an undercover investigation.
>
> To gain access to all the information on the website, a prospective subscriber was prompted to go to a sign-up page hosted by "KeyZ." The subscriber then had to provide his or her name, address, and a credit card number to which to charge a fee of $29.95 for thirty days' access. Nelson purchased access and found pornography on "Lolita World" that involved children ranging from infants to teenagers. Further investigation uncovered that Landslide, Inc. ("Landslide"), provided a computerized credit card verification service used by various webmasters whose websites contained adult and child pornography. Landslide offered access under (1) the adult verification system ("AVS") and (2) the "KeyZ" system.
>
> AVS subscribers paid $19.95, which provided six months' access

to all the websites under the AVS umbrella. The websites accessed through AVS offered adult pornography only.

KeyZ subscribers purchased access to specific sites at $29.95 per month. Landslide retained a portion of the money collected, and the webmasters received the rest. Under the KeyZ system, Nelson found twenty-eight websites depicting child pornography. These websites included Lolita Hardcore/Fucking Little Kids, Blackcat Lolita, Children of God, Children Forced to Porn, Just Grow Up, Child Rape, Children Playground, Innocent Lolita, Fantastic Site, and Special Site.

Nelson captured information from some of the websites by using an Internet card that permitted him to record the information onto a video cassette recorder. He also used a software package called "Web Buddy" to capture the information from the websites and copy it onto the hard drive of his computer so he could view it offline. He determined the locations of the websites from which the child pornography originated by using a software package called "VisualRoute." The location of each image of child pornography alleged in the indictment was traced to an internet service provider outside Texas.

The Landslide and AVS homepages displayed banners, or online advertisements with hyperlinks, alerting potential subscribers to the availability of child pornography on various websites. In addition, Landslide offered a free "adult classified advertisements" section on the website that showed banners advertising child pornography. On reviewing the ads, Nelson found postings by persons wanting to trade child pornography, to have sexual contact with children, and to trade KeyZ passwords.

The Reedys were the owners and operators of Landslide, and Thomas Reedy was it founder. Janice Reedy held various positions with the company beginning in January 1998, including handling its financial transactions. During an interview with law enforcement agents, Thomas Reedy admitted that he and his wife knew some of the websites contained child pornography and that child pornography represented thirty to forty percent of his business. The Reedys had authored and

received emails indicating that they were aware that some of the websites on the KeyA system offered child pornography and that the Reedys knew the transmission of child pornography was illegal.

During a search of the Reedys' residence in September 1999, law enforcement agents seized a desktop computer and a notebook computer. The basis of Count 89 was seventy-one child pornography images from the desktop computer. The police found three images of child pornography on the notebook computer.

Landslide's gross sales from September 1997 through August 1999 were $9,275,964; $204,025 was returned to dissatisfied customers. Landslide incurred costs of $6,103,517. Based on this information, the auditor determined that Landslide had made a profit of $2,968,422 and that $1,290,412 of the proceeds came from the eleven websites named in the indictment.

*Reedy* at 304 F.3d 361-362.

## SUMMARY OF THE ARGUMENT

The district court did not reach the merits of Reedy's claim of ineffective assistance because it found that he had not shown by "clear and convincing evidence" that no reasonable factfinder would find him guilty," a prerequisite under 28 U.S.C § 2255(h)(1). *Reedy, supra*, at 2013 WL 705155 *9. In so ruling, however, the court did not consider *any* of the defendant's evidence at trial. Section 2255(h)(1), however, dictates that the court view newly discovered evidence "in light of the evidence *as a whole*." 28 U.S.C. § 2255(h)(1) (Emphasis added). This standard is also the one set out by the Supreme Court in *House v. Bell*, 547 U.S. 518 (2006). In ruling that the "newly

discovered evidence" was not "clear and convincing," *Reedy* at 2013 WL 705155 *7, the district court applied the wrong legal standard, and the case should be sent back to the district court to consider *both* the newly discovered evidence and the defendant's evidence introduced at trial.

## POINT OF ERROR

THE DISTRICT COURT ERRED IN USING THE WRONG LEGAL STANDARD TO DENY APPELLANT RELIEF.

## ARGUMENT

### A.

### The Standard of Review

Where a district court denies a successive 2255 motion based on a legal conclusion that a defendant has not established that he has satisfied the requirements of 28 U.S.C. § 2255(h), this Court reviews the decision "under a de novo standard of review." *Reyes-Requena v. United States*, 243 F.3d 893, 900 (5th Cir. 2001).

### B.

### The District Court's error

In holding that Reedy had not met the prerequisite in 28 U.S.C. § 2253(h)(1), the district court divided its opinion into two issues: (1) "Whether the newly discovered evidence is clear and convincing," *Reedy, supra*, at *4 and (2) "Whether

5

Reedy's 'new' evidence shows that no reasonable fact finder would have found him guilty." *Id.* at *7. As the Court can see, these issues are really the same, and the district court concentrates solely on the newly discovered evidence and the prosecution's evidence.

The district court employed the wrong legal standard, however, because Section 2255(h)(1) by its plain language requires a court to evaluate *all* of the evidence, as this Court observed in *Reyes-Requena, supra*, at 243 F.3d 900. The reason for this requirement is amply illustrated in *House v. Bell, supra*.

In *House,* the petitioner submitted new evidence that, *inter alia*, included testimony by two witnesses that the victim's husband had committed the crime, not the petitioner. *House* at 347 U.S. 548. The Court did not decide the case based on this new evidence alone, but considered it in conjunction with testimony introduced by the defendant at trial that the husband had hit his wife at least once, and that two weeks before the murder the victim indicated she was scared of her husband, and wanted to leave him. *Id.* The Court noted that the prosecution's evidence suggested an "inference of guilt," but decided that the petitioner had met his burden at showing that "no reasonable juror viewing *the record as a whole* would lack reasonable doubt." *House* at 547 U.S. 554 (Emphasis added).

In this case, by contrast, the district court made no attempt to discuss the

defensive evidence at trial, or respond to Reedy's arguments in his Reply Brief that the new evidence *did* impact the prosecution's evidence. At trial, for example, Inspector Steve Huggins admitted on cross-examination that webmasters could change data in the KeyZ database without Landslide's involvement. R. III-605. If this was so, taken in conjunction with the new evidence that Landslide's computer files had been corrupted, Detective Steve Nelson's testimony, which the district court stressed, *Reedy*, at *6, becomes less impressive.

And, of course, the district court paid no attention to the uncontradicted trial testimony that Reedy offered to help the Government shut down child porn sites. R. III-608. In fact, as well as omitting any discussion of exculpatory evidence at trial, the district court mischaracterized the prosecution's testimony, declaring that Reedy admitted that "child pornography represented thirty to forty percent of his business...." *Reedy* at *8. On cross-examination, however, Huggins clarified what the "thirty percent" meant:

> Q. "All right. Now, you you [sic] indicated that he said something about the percentage – He was asked about the percentage of sites using his service that might have child porn content on it. Do you recall that inquiry?"
>
> A. "Initially 30, and then he said about 40 percent of the sites were making money, and then he said about 30 was an estimate off the top of his head."

> Q. "Well, in fact, on the last page of your memorandum of interview he estimated out of the 5,700 sites used by AVS and KeyZ, about 30 to 30, 30 to 40, have child pornography. That's what he told you correct?"
>
> A. "Yes."

R. III-609-610.

To say that thirty percent of *the porn sites* Landslide serviced made money, however, is not to say that thirty percent of *Reedy's* profits came from those sites. Indeed, it is not even to say that thirty percent of the sites Landslide serviced were porn sites: to the contrary, only thirty to forty sites out of *5,700* sites contained child porn–a fact pointing to innocence.

In short, the district court paid no attention to the plain language of Section 2255(h)(1), or to the Supreme Court's admonition in *House* that the reviewing court must consider "all the evidence"-- both "old and new, incriminating and exculpatory....." *House* at 547 U.S. 538. It may be that Reedy cannot pass the "clear and convincing" test, but he has not been given the chance to do so. The trial court could not just tell him, "Prove your innocence," but completely ignore the evidence at trial introduced to establish that fact.

## CONCLUSION

Appellant requests the Court to grant a certificate of appealability, and summarily remand the case to the district court to consider Appellant's claim using the proper legal standard.

Respectfully submitted,

/s/ Terrence W. Kirk
Terrence W. Kirk
State Bar No. 11513500
502 West 13th Street
Austin, Texas 78701
(512) 236-8511
(512) 476-5346 (Fax)
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I certify that on August 30, 2013, a copy of this Brief was sent via the CM/ECF System to Mr. Frank Lawrence Gatto, Assistant United States Attorney, Northern District of Texas.

/s/ Terrence W. Kirk
Terrence W. Kirk